**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No. 08-cv-02325-LTB-BNB

HOWARD GRIEGO,
PAUL CHANDLER-BEY, and
HENRY DOMINGUEZ,

    Plaintiffs,

v.

BARTON LEASING, INC.,

    Defendant.
_____

**ORDER**
_____

    THIS MATTER is before the Court on Defendant's Motion for Summary Judgment Directed to All Claims Asserted By Plaintiff Chandler-Bey, filed October 23, 2009 (docket #22); Plaintiff Chandler-Bey's Response, filed December 11, 2009 (docket #28); and Defendant's Reply, filed January 7, 2010 (docket #34). Plaintiff asserts a race discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and a claim under the Americans with Disabilities Act (ADA) 42 U.S.C. § 12102. Oral argument would not materially assist the determination of this motion. After consideration of the motion, the papers, and the case file, and for the reasons stated below, Defendant's motion is granted.

    I.    <u>BACKGROUND</u>

    The following facts are alleged. Barton is a distributor of fabricated rebar, structural steel, concrete forming systems, and other concrete construction accessories. Plaintiff

Paul Chandler-Bey (hereinafter "Plaintiff") began work at J.R. Distributing as a truck driver in or around September 1999. Barton acquired J.R. Distributing. In March 2003, Plaintiff suffered a non-work related injury resulting from a gunshot. Plaintiff did not work at Barton during his recovery. He returned to work in June 2004. As a result of his injury, Plaintiff was restricted from lifting objects weighing thirty pounds or more. To accommodate his injury and lifting restriction, Plaintiff was transferred from a route truck driver to a transfer truck driver.

Plaintiff testified during his deposition that he takes care of his garden, fixes and repairs his daughters' bikes, goes fishing, attends his daughters' sporting events, and works. See Chandler-Bey Dep., 4:24-5:20, 16:1-24, 17:18-18:15, 20:20-22, 161:19-162:3. In his affidavit, Plaintiff testified that his daily recreation activities are limited in the following manner: he is limited in the amount of walking he can do, he can no longer ride a bike, and he has difficulty engaging in play and recreational activities with his children. Chandler-Bey Affidavit p. 2. He also stated in his affidavit that he must hire someone to mow the lawn, rake leaves, vacuum, laundry, and other chores. Id. Or, he must delegate those tasks to someone else. Id. He is also limited in his ability to sit and stand for long periods of time without experiencing discomfort. Id.

In April 2005, Plaintiff contracted viral meningitis and was absent from work as directed by his physician for three months. Plaintiff returned to work on July 22, 2005. During this extended absence, Barton was required to fill the transfer driver position for business reasons. Upon his return to Barton, Plaintiff was assigned to work at the front desk and perform various administrative assignments.

In his affidavit, Plaintiff states that approximately three weeks after his return to work he was directed to see the company doctor. Id. at 3. The doctor stated that it was clear that the company was trying to get rid of him. Id. He returned to work and provided the medical documentation he had received from the company doctor to the company. Id. He was then told that the information would be provided to Charlie Whelan and that he was to go home while the company reviewed the medical information and that he should wait for a call from the company before returning to work. Id. Plaintiff states that he waited three weeks and was then contacted by the company. Id. Sherry Richardson-Ellis, the human resources person at the company, informed him that he had been terminated for missing too much work. Id. Plaintiff states that another employee told him that comments were made about him. Id. The first comment, made by someone unnamed in Plaintiff's affidavit, was that the company did not want "that porch monkey" working at the front desk. Id. The second comment, also made by someone unidentified in Plaintiff's affidavit, was that the company did not want a person looking like him at the front desk. Id. Plaintiff states that he did not return to the worksite. Id.

Donald Barton, Owner and Vice President of Rebar Operations for Barton Leasing, Inc., in his affidavit states that Plaintiff did not show up for work at the end of the week of September 9, 2005. Donald Barton Affidavit p. 3. Plaintiff's supervisor notified management that Plaintiff did not give prior notice of his absence, and did not request or receive approval to be absent from work during this time. Id. Barton states that Plaintiff returned to the worksite on or about September 21, 2005. Id. Plaintiff was terminated on September 22, 2005 for absence from work for three consecutive days without prior notice. Id.

Plaintiff and Defendant both included facts regarding whether or not Plaintiff took any prior Family Medical Leave Act leave during his previous absences. These facts are not addressed in this order as they are not relevant to the claims before me and no Family Medical Leave Act claim has been raised by the Plaintiff.

II.     STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is not proper if—viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor—a reasonable jury could return a verdict for the non-moving party. *Mares v. ConAgra Poultry Co.*, Inc., 971 F.2d 492, 494 (10th Cir. 1992).

In a motion for summary judgment, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, *supra*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). If this burden is met, then the non-moving party has the burden of showing there are genuine issues of material fact to be determined. *See id.* at 322. It is not enough that the evidence be merely colorable; the non-moving party must come forward with specific facts showing a genuine issue for trial. *See id.*; *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material if it might affect the outcome of the suit under

the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  I shall grant summary judgment, therefore, only if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420 (10th Cir. 1990); Fed. R. Civ. P. 56(c).

In a motion for summary judgment, I view the evidence "through the prism of the substantive evidentiary burden."  *Liberty Lobby, supra*, 477 U.S. at 254.  The inquiry is based on "the quality and quantity of evidence required by the governing law" and "the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant."  *Id.*

III.   ANALYSIS

A.   Title VII Claim

Defendant argues that Plaintiff's claim for race discrimination must fail because Plaintiff has failed to exhaust his administrative remedies as he did not raise this claim in the Charge of Discrimination that he filed with the EEOC.  Defendant asserts that Plaintiff's Charge of Discrimination only mentions disability discrimination.  The Charge states, "I believe that I was discrimination against in violation of the Americans with Disabilities Act because I was terminated from my position and the company failed to accommodate my disability."  Charge of Discrimination.

Plaintiff responds asserting that there is no requirement that the Title VII claim be specifically included in the charge. Plaintiff further asserts that during the investigation by the EEOC, allegations of racial discrimination were examined by the EEOC.

A plaintiff must exhaust his or her administrative remedies before bringing a Title VII claim to federal court. *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Normally, a plaintiff may not bring a claim that was not a part of a timely-filed EEOC charge for which plaintiff has received a right to sue letter. *Id.* The charge "shall be in writing and signed and shall be verified," 29 C.F.R. § 1601.0, and must at a minimum identify the parties and "describe generally the action or practices complained of" 29 C.F.R. § 1601.12(b).

Upon review of the pleadings and evidence before me, I conclude Barton is entitled to summary judgment on Plaintiff's Title VII claim. Here, in Plaintiff's charge of discrimination, there is no mention at all of any factual allegations concerning Plaintiff's race, color, religion, sex, or national origin. The fact that the EEOC may have investigated some allegations of racial discrimination unrelated to Plaintiff charge of discrimination is irrelevant. Therefore, I conclude as a matter of law that, I lack jurisdiction over Plaintiff's Title VII claim as Plaintiff failed to exhaust his administrative remedies regarding the Title VII claim. Because I lack jurisdiction over Plaintiff's Title VII claim, it is unnecessary for me to address any remaining arguments regarding Plaintiff's Title VII claim.

      B.    ADA Claim

Defendant asserts the Plaintiff's ADA claim must fail as a matter of law because Plaintiff is not disabled within the meaning of the ADA and Plaintiff cannot meet his burden to establish a prima facie case of discrimination. Defendant argues that Plaintiff's

impairment does not substantially limit any major life activity. Plaintiff, in response, claims that he is "disabled" under the ADA because he has an impairment that substantially limits the major life activities of lifting, pushing and pulling; participating in sports, including bicycling, walking, running, playing sports with his children; sitting and standing for long periods of time; and participating in household chores.

To make out a prima facie case of discrimination under the ADA, Plaintiff must establish: "(1) he is a disabled person as defined by the ADA; (2) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) his employer discriminated against him because of his disability." *See MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). Once Plaintiff establishes his prima facie case, Defendant bears the burden of providing a legitimate, nondiscriminatory reason for the adverse employment decision. *See Butler v. City of Prairie Village*, 172 F.3d 736, 747 (10th Cir. 1999). If Defendant is able to articulate a legitimate, nondiscriminatory reason, the burden shifts back to Plaintiff to show the justification to be pretextual. *See id.* at 748. "The [ADA] defines disability as either (1) a physical or mental impairment that substantially limits one or more of an individual's major life activities, 42 U.S.C. § 12102(2)(A); (2) a record of such an impairment, 42 U.S.C. § 12102(2)(B); or (3) being regarded as having such an impairment, 42 U.S.C. § 12102(2)(C)." *MacKenzie, supra*, 414 F.3d at 1275.

An impairment substantially limits a major life activity if the individual is (1) "unable to perform a major life activity that the average person in the general population can perform"; or (2) "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition,

manner, or duration under which the average person in the general population can perform the same major life activity." 29 C.F.R. § 1630.2(j)(1). I must consider the following factors in determining whether an impairment substantially limits a major life activity: (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long term impact resulting from the impairment. *Id.* § 1630.2(j)(2).

As to Plaintiff's lifting restriction, several courts have held that restriction on heavy lifting is not a substantial limitation on a major life activity. *Gillen v. Fallon Ambulance Serv. Inc.*, 283 F.3d 11, 21 citing *Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1207 (8th Cir. 1997)(holding that a restriction on lifting more than twenty-five pounds is insufficient to constitute a disability within the meaning of the ADA); *Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir. 1996)(theorizing that the inability to perform heavy lifting does not render a person "substantially limited" in the major life activity of lifting). I find these opinions persuasive in holding that Plaintiff's thirty pound lifting restriction is not a substantial limitation on the major life activity of lifting.

As for Plaintiff's other identified endeavors other courts have considered them and have not found them to be major life activities. See e.g., *Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 951 (7th Cir. 2000)(stating that an argument that mowing the lawn is a major life activity would not be meritorious); *Weber v. Strippit, Inc.*, 186 F.3d 907, 914 (8th Cir. 1999)(shoveling snow, gardening, mowing the lawn, playing tennis, fishing, and hiking are not major life activities); *Kirkendall v. United Parcel Serv., Inc.*, 964 F. Supp. 106, 110-11 (W.D.N.Y. 1997)(playing with children in a "normal fashion" is not a major life activity).

Here, I conclude that Plaintiff's injury does not substantially limit any major life activity. Further, I conclude that Plaintiff has presented no evidence of what activities the general population can engage in for me to make the necessary comparison directed by the case law. I must therefore conclude that there is no genuine issue of material fact as to whether Plaintiff has an actual disability under the ADA. For these reasons, I grant summary judgment on Plaintiff's ADA claim.

IV. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendant's Motion for Summary Judgment Directed to All Claims Asserted by Plaintiff Chandler-Bey, filed October 23, 2009 (docket #22) is **GRANTED**. It is

FURTHER ORDERED that Plaintiff Chandler-Bey's claims are **DISMISSED WITH PREJUDICE**, **with costs awarded to Defendant**.

Dated: February 19, 2010

BY THE COURT:

   s/Lewis T. Babcock
Lewis T. Babcock, Judge